FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 25, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMY ROUSE, | No. 1:17-CV-3031-JTR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney Cory J. Brandt represents Amy Rouse (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for disability insurance benefits and supplemental security income on April 20, 2011, alleging disability since January 1, 2009, due to PTSD, severe depression and panic attacks. Tr. 218, 225, 262. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Kimberly Boyce held hearings on April 8, 2013, and September 11, 2013, Tr. 51-87, and issued an unfavorable decision on October 17, 2013, Tr. 10-23. The Appeals Council denied review on March 17,

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

2015.  Tr. 1-4.  The ALJ's October 2013 decision was then appealed to the United States District Court.  Tr. 609.  On December 18, 2015, Chief Judge Rice issued an order remanding the matter for additional proceedings.  Tr. 612-625.  ALJ Boyce held a *de novo* hearing on May 4, 2016, Tr. 554-579, and issued another unfavorable decision on November 21, 2016, Tr. 509-519.  The ALJ's November 2016 decision thus became the final decision of the Commissioner which is appealable to the district court.  20 C.F.R. § 404.984(a).  Plaintiff filed this action for judicial review on February 16, 2017.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on January 27, 1977, and was 31 years old on the alleged onset date, January 1, 2009.  Tr. 65, 218, 225.  She obtained a GED at age 19 and earned a certification in phlebotomy in 2000.  Tr. 66.  Plaintiff testified at the September 2013 administrative hearing that she got married in May of 2010 and resided in a home with her husband and two youngest children, ages six months and two.  Tr. 67-69.  Plaintiff's husband worked Monday through Friday or Saturday, from 8:30 a.m. to 5:00 p.m., and Plaintiff cared for her young children during those times.  Tr. 69.  Plaintiff also has two older children, ages 17 and 14 at the time of the September 2013 administrative hearing, but those children were being taken care of by her sister.  Tr. 75.

Plaintiff's disability report indicates she stopped working on June 4, 2009 because of her condition.[1]  Tr. 262.  When asked why she believed she could not

_____

[1]Plaintiff's mother reported that Plaintiff began counseling for depression at age 12 (1989) and had drug abuse issues, including methamphetamine use, in her late teens.  Tr. 324.  In 2000, Plaintiff was admitted to a long term drug treatment

work, Plaintiff testified she had difficulty leaving her house and being around people.  Tr. 72.  With respect to her last job, she indicated she just got to a point where she was not able to perform the work; stating "it just didn't work out."  Tr. 77.  She described having panic attacks on the job and an inability to calm down.  Tr. 77.  Plaintiff also testified she has difficulty organizing her thoughts and completing tasks, experienced disturbed sleep, and had low energy.  Tr. 80-81, 572.

Plaintiff stated she has been in counseling for a long time (off and on for 10 years) and was on medication for her symptoms.  Tr. 73.  However, she indicated at the September 2013 administrative hearing that she had not attended counseling for about 18 months, Tr. 72, and, at the May 2016 administrative hearing, that she had not seen a therapist for her PTSD since 2011, Tr. 560.  Plaintiff stated she had been seeing her family practitioner, Dr. Twe, once every three months for her symptoms.  Tr. 561.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is

---

center and subsequently obtained sobriety.  Tr. 324.  On November 24, 2000, Plaintiff was attacked in her apartment by a male friend.  Tr. 324-325.  Plaintiff was stabbed 23 times, sustained broken facial bones, and injured her eye and right hand in the attack.  Tr. 325.  Plaintiff's mother indicated that, following the attack, Plaintiff has had significant issues with anxiety, depression and PTSD.  Tr. 325.

defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On November 21, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 1, 2009. Tr. 511. At step two, the ALJ determined Plaintiff had the following severe impairments: depression and post-traumatic stress disorder. Tr. 512. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 512.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform a full range of work at all exertional levels with the following nonexertional limitations: in order to meet ordinary and reasonable employer expectations regarding attendance, production and work place behavior, she could understand, remember and carry out unskilled, routine and repetitive work that could be learned by demonstration and in which tasks to be performed were predetermined by the employer; she could cope with occasional work setting changes and occasional interaction with supervisors; she could work in proximity to coworkers, but not in a team or cooperative effort; and she could perform work that did not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public was not precluded. Tr. 513-514.

At step four, the ALJ found Plaintiff was not able to perform her past relevant work. Tr. 517. However, at step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of industrial cleaner, kitchen helper and laundry worker II. Tr. 518-519. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time

from January 1, 2009, the alleged onset date, through the date of the ALJ's decision, November 21, 2016.  Tr. 519.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred in this case by (1) improperly rejecting the opinions of her treating physician, Sui M. Twe, M.D.; (2) improperly rejecting Plaintiff's subjective complaints; and (3) relying on an incomplete hypothetical at step five of the sequential evaluation process.  ECF No. 14 at 8-17.

## DISCUSSION

**A.      Sui M. Twe, M.D.**

Plaintiff first contends the ALJ erred by improperly rejecting the opinions of her treating physician, Sui M. Twe, M.D.  ECF No. 14 at 8-12.

If the opinion of a treating physician is not contradicted, it can only be rejected with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews*, 53 F.3d at 1043. Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding an examining or treating physician's opinion.  *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Here, Dr. Twe's opinions were contradicted by other medical sources of record, including state agency reviewing physicians, Tr. 97-98 & 123-124 (John D. Gilbert, Ph.D., and Steven Haney, M.D., indicating Plaintiff was capable of performing simple, repetitive work involving limited contact with the public and co-workers); Crystal Coffey, Pharm. D., of Central Washington Comprehensive

Mental Health, Tr. 344, 426-428, 433-436 (consistently noting no impairment of memory or intellectual functioning and fair to good insight and judgment); and Roland Dougherty, Ph.D., Tr. 472-478 (finding Plaintiff's prognosis to be fair and dependent upon her sustained use of counseling resources and that she should be able to understand, remember and follow simple directions though some concentration problems were likely). Therefore, the ALJ needed to only provide specific and legitimate reasons for rejecting the opinions of Dr. Twe.

On March 7, 2011, Dr. Twe opined that Plaintiff, who was pregnant at the time, was limited to sedentary work. Tr. 332. On August 14, 2013, Dr. Twe filled out a "Medical Report" form indicating Plaintiff was not capable of performing any work at the time due to her symptoms and that Plaintiff's limitations had existed since at least 2004. Tr. 496. Dr. Twe also marked that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate. Tr. 496. Dr. Twe filed out a "Mental Medical Source Statement" form at that time which found Plaintiff "markedly limited" (very significant interference with basic work-related activities) or "severely limited" (inability to perform one or more basic work-related activities) in all categories of functioning. Tr. 499-502.

The ALJ noted several valid reasons for according Dr. Twe's extreme limitation findings "little weight" in this case. Tr. 516-517.

First, the ALJ determined Dr. Twe's limitation to sedentary work in 2011, Tr. 332, was primarily based on Plaintiff's temporary pregnancy condition, not a physical ailment. There is no notation of Dr. Twe performing a physical examination, and no other medical professional of record has limited Plaintiff to sedentary work. The Court agrees with the Commissioner that there is no support for Plaintiff being limited to sedentary exertional level work.

The ALJ next indicated Plaintiff's ability to be the primary caregiver for her young children greatly undermined Dr. Twe's opinion that Plaintiff was incapable of engaging in work activity. Tr. 516-517. The ALJ found that Plaintiff's

successful primary parenting of two small children, an emotionally demanding activity, suggested she did not have as severe emotional difficulty as assessed by Dr. Twe. Tr. 516. The ALJ explained that although childcare activity in the home does not generally involve going out in public or being around strangers, the record reflected that Plaintiff had been taking her daughter to therapy sessions and cooperating with medical personnel during those appointments which suggested Plaintiff had a greater ability to be in the public than alleged. Tr. 516. The ALJ further explained that Plaintiff's ability to organize, occupy and supervise her children's time required her to adhere to a schedule of basic care, make decisions and respond appropriately to unexpected scenarios such as illness, accidents and mood disturbances or misbehavior on the part of her children. Tr. 517. Plaintiff's demonstrated ability to care for her two young children was inconsistent with Dr. Twe's opinion regarding Plaintiff's mental functioning.

Next, the ALJ noted Plaintiff's activities of daily living were inconsistent with Dr. Twe's opinions. Tr. 516. Plaintiff reported daily bike riding, which required her to go outside of her home, and attending a church class on interpersonal boundaries. Tr. 395. Plaintiff's sister reported that Plaintiff would leave the house twice daily, go outside on her own, go shopping, and attend church and sporting events on a fairly regular basis, which involved going out in public and being around strangers. Tr. 272-273. The foregoing activities are inconsistent with the extreme limitations opined by Dr. Twe in this case.

The ALJ next found that Plaintiff's performance on mental status examinations and other objective medical evidence of record were not consistent with the marked to severe limitations assessed by Dr. Twe. Tr. 517. As noted by the ALJ, Tr. 517, mental status examinations revealed Plaintiff's thought content was appropriate, thought process was intact, judgment was fair, intellect was average, and there was no impairment of her cognition or memory, Tr. 343, 358. It was additionally noted that, on exam, Plaintiff's remote memory was okay, she

was able to carry out a three-step command with ease, she had no difficulty following conversation, and she was able to give appropriate, abstract explanation for common proverbs. Tr. 476. Finally, the ALJ indicated that after her pregnancy in 2013, Plaintiff denied having depression or anxiety and reported her moods were doing well. Tr. 782. The aforementioned medical examination findings and objective medical evidence of record are not consistent with the significant limitations assessed by Dr. Twe.

The ALJ also indicated that Dr. Twe's opinions were not fully consistent with Dr. Twe's own treatment notes. Tr. 517. Although Dr. Twe stated that Plaintiff had severe and long-term anxiety symptoms, her notes reflect that Plaintiff experienced an improvement in her symptoms. Tr. 517. For example, in May 2014, Plaintiff reported "doing OK" since Dr. Twe upped the dose of her Paxil. Tr. 778. Plaintiff also reported to Dr. Twe's office in November 2015 that her medications were working and she was doing "very well." Tr. 770. The treatment notes reflect findings by Dr. Twe that Plaintiff was alert, pleasant, cooperative, and appropriate. Tr. 767-781. In March 2014, Dr. Twe encouraged Plaintiff to try to at least work part-time. Tr. 779. As concluded by the ALJ, Dr. Twe's treatment notes and recommendation for Plaintiff to obtain part-time work are inconsistent with the marked to severe limitations assessed by Dr. Twe. Tr. 571, 779.

Based on the foregoing, the Court finds that the ALJ provided specific, legitimate reasons that are supported by substantial evidence for according "little weight" to the significant limitations assessed by Dr. Twe in this case. The ALJ did not err with respect to her findings regarding Dr. Twe's opinions.

**B. Plaintiff's Symptom Testimony**

Plaintiff asserts the ALJ also erred by improperly rejecting Plaintiff's subjective complaints. ECF No. 14 at 12-15.

///

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical and other evidence of record. Tr. 514.

The ALJ first held that the objective medical evidence of record did not substantiate Plaintiff's allegations of disabling functional limitations. Tr. 514-515.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in determining credibility, the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

Despite Plaintiff's allegations of significant mental limitations, the ALJ found her performance on mental status examinations established she was capable of performing, at a minimum, unskilled routine and repetitive work. Tr. 514. As noted above, mental status examination findings revealed Plaintiff's thought

content was appropriate, thought process was intact, judgment was fair, intellect was average, and there was no impairment of her cognition or memory, Tr. 343, 358, and further that Plaintiff's remote memory was okay, she was able to carry out a three-step command with ease, she had no difficulty following conversation, and she was able to give appropriate, abstract explanation for common proverbs, Tr. 476. It was also noted by the ALJ that Plaintiff did not exhibit an impairment of memory or intellectual functioning during her medication management examinations in late 2009, Tr. 426, 434, and she was able to engage in a cooperative manner with medical personnel, indicating she was capable of being around others, Tr. 357, 426, 434, 475. The ALJ additionally indicated that after her pregnancy in 2013, Plaintiff denied having depression or anxiety and reported her moods were doing well. Tr. 515, 782.

As determined by the ALJ, the objective medical evidence of record does not support the disabling limitations alleged by Plaintiff in this case.

The ALJ next determined Plaintiff reported an improvement in her symptoms with medication. Tr. 515.

The effectiveness of medication in alleviating pain and other symptoms is a relevant factor to consider in evaluating the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(iv); *see e.g. Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling).

As indicated above, in addition to denying depression and anxiety and reporting her moods as doing well in 2013, Tr. 782, Plaintiff indicated in May 2014 that she was "doing OK" since Dr. Twe upped the dose of her Paxil. Tr. 778. Plaintiff also reported to Dr. Twe's office in November 2015 that her medications were working and she was doing "very well." Tr. 770.

1    This noted improvement of symptoms on medication is relevant to the ALJ's
2    assessment of Plaintiff's subjective complaints.
3        The ALJ next noted that Plaintiff had a history of limited mental health
4    treatment attendance with various no-shows and cancellations.  Tr. 515.
5        In assessing a claimant's credibility, an ALJ properly relies upon
6    "'unexplained or inadequately explained failure to seek treatment or to follow a
7    prescribed course of treatment.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th
8    Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284); *Fair*, 885 F.2d at 603.  "[I]f the
9    frequency or extent of the treatment sought by an individual is not comparable with
10   the degree of the individual's subjective complaints, or if the individual fails to
11   follow prescribed treatment that might improve symptoms, we may find the
12   alleged intensity and persistence of an individual's symptoms are inconsistent with
13   the overall evidence of record."  SSR 16-3p.  Moreover, an "unexplained, or
14   inadequately explained, failure to seek treatment may be the basis for an adverse
15   credibility finding unless one of a 'number of good reasons for not doing so'
16   applies."  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).
17       Despite Plaintiff's allegations of severely disability mental health symptoms,
18   the record in this case is replete with Plaintiff's medical appointment cancellations
19   and no-shows.  Furthermore, the evidence demonstates that Plaintiff engaged in
20   minimal mental health treatment overall.  At the September 2013 administrative
21   hearing, Plaintiff testified she had not attended counseling for about 18 months, Tr.
22   72, and, at the May 2016 administrative hearing, that she had not seen a therapist
23   for her PTSD since 2011, Tr. 560.  Plaintiff stated she had been managing her
24   symptoms by visiting her family practitioner, Dr. Twe, only once every three
25   months.  Tr. 561.  As noted by the ALJ, while Central Washington Comprehensive
26   Mental Health offered Plaintiff home visits for treatment, Tr. 409, 411, there was
27   no indication Plaintiff ever pursued those services.  Tr. 515.
28   ///

It was reasonable for the ALJ to conclude that the frequency of Plaintiff's treatment was inconsistent with the level of Plaintiff's complaints in this case. SSR 16-3p. As such, the ALJ did not err by relying, in part, upon Plaintiff's minimal mental health treatment in concluding Plaintiff had limited credibility.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's allegations were not entirely credible in this case.

**C.     Step Five**

Plaintiff contends that the ALJ also erred by relying on the vocational expert's testimony in response to a hypothetical that was not supported by the weight of the record evidence. ECF No. 14 at 15-16.

As determined above, the ALJ did not err by according "little weight" to the extreme limitations assessed by Dr. Twe in this case or by finding Plaintiff's subjective complaints less than fully credible. *See Supra.* Consequently, the weight of the record evidence in this case supports the ALJ's ultimate RFC determination.

The ALJ determined Plaintiff could perform work at all exertional levels with certain nonexertional limitations. Tr. 513-514. At the administrative hearing held on May 4, 2016, the vocational expert testified that with the restrictions assessed by the ALJ, Plaintiff retained the capacity to perform a significant number

of jobs existing in the national economy, including the positions of industrial

cleaner, kitchen helper, and laundry worker II.  Tr. 576-577.  Since the vocational

expert's testimony was based on a proper RFC determination by the ALJ,

Plaintiff's Step Five argument, ECF No. 14 at 15-16, is without merit.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the

ALJ's decision is supported by substantial evidence and free of legal error.

Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 15**, is

**GRANTED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy

to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant

and the file shall be **CLOSED**.

DATED January 25, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 14